UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBIN MARIE SNOW,

                Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

Case No. 3:15-cv-05643-KLS

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge.[1] The Court finds defendant's decision to deny benefits should be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits alleging she became disabled beginning April 1, 2004.[2] Her application was denied on initial administrative review and on reconsideration.[3] At a hearing held before an Administrative Law Judge (ALJ), plaintiff appeared and testified, as did plaintiff's husband and a friend, and a vocational expert.[4]

In a written decision, the ALJ determined that through plaintiff's date last insured (DLI),

---

[1] 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13.

[2] Dkt. 11, Administrative Record (AR), 11.

[3] *Id.*

[4] AR 24-66.

ORDER - 1

she had no severe impairment and therefore was not disabled.[5] The Appeals Council denied plaintiff's request for review of that decision, making it the final decision of the Commissioner, which plaintiff then appealed to this Court.[6]

As the parties have completed their briefing, this matter is ripe for the Court's review. Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings, because the ALJ erred:

(1) in finding plaintiff had no severe impairments;

(2) in failing to utilize a medical expert to determine whether plaintiff's functional limitations related back to the period prior to her date last insured; and

(3) in failing to properly consider the lay witness evidence in the record.

The Court disagrees that the ALJ erred as alleged, and thus finds the ALJ's decision should be affirmed. Although plaintiff requests oral argument, the Court finds such argument unnecessary.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination.[7] "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."[8] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] The Commissioner's findings will be upheld

---

[5] AR 11-19.

[6] 20 C.F.R. § 404.984; Dkt. 3.

[7] *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991).

[8] *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)).

[9] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

ORDER - 2

"if supported by inferences reasonably drawn from the record."[10]

Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required."[11] "If the evidence admits of more than one rational interpretation," that decision must be upheld.[12] "Where there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made."[13]

I.  The ALJ's Findings at Step Two

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled.[14] If the claimant is found disabled or not disabled at any step thereof, the disability determination is made at that step, and the sequential evaluation process ends.[15] At step two of the evaluation process, the ALJ must determine if an impairment is "severe."[16] An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities.[17] Basic work activities are those "abilities and aptitudes necessary to do most jobs."[18]

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work."[19] Plaintiff must prove that

---

[10] *Batson*, 359 F.3d at 1193.

[11] *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[12] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

[13] *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[14] 20 C.F.R. § 404.1520.

[15] *Id.*

[16] 20 C.F.R. § 404.1520.

[17] 20 C.F.R. § 404.1520(a)(4)(iii); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1.

[18] 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856, at *3.

[19] SSR 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988).

ORDER - 3

his "impairments or their symptoms affect her ability to perform basic work activities."[20] The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims.[21]

The Social Security Act provides that every claimant who is "insured" for disability insurance benefits, and who is "under a disability," will be entitled to such benefits.[22] To be entitled to disability insurance benefits, however, a claimant "must establish that her disability existed on or before" the date her insured status expired.[23] A claimant's disability must "be continuously disabling from time of onset during insured status to time of application for benefits, if an individual applies for benefits for current disability after expiration of insured status."[24] Because plaintiff's DLI was December 31, 2004, she must establish she was disabled by that date.[25] She has not done so.

The ALJ found plaintiff had several medically determinable impairments, none of which were severe through her date last insured.[26] In so finding, the ALJ gave significant weight to the opinions of Steve Haney, M.D., and Renee Eisenhauer, Ph.D., who based on their review of the record, found insufficient evidence to rate plaintiff's mental functional capacity prior to her DLI.[27] Plaintiff argues the ALJ erred in giving such weight to their findings, as both medical sources also indicated the late effects of her cerebrovascular disease and organic brain syndrome

---

[20] *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

[21] *Smolen*, 80 F.3d at 1290.

[22] 42 U.S.C. § 423(a).

[23] *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

[24] *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1460 (9th Cir. 1995).

[25] AR 13; *Tidwell*, 161 F.3d at 601.

[26] AR 13.

[27] AR 17, 71, 78.

ORDER - 4

were severe impairments.[28]

Plaintiff asserts this indication of impairment severity means Dr. Haney's and Dr. Eisenhauer's insufficient evidence finding really refers to her RFC, and thus the ALJ improperly conflated that RFC assessment with the severity finding. Even if plaintiff is correct in her interpretation, the fact is that both medical sources found insufficient evidence concerning the impact her impairments had on her ability to function prior to her DLI. Since the evidence is insufficient to base a determination of her actual functional capability during the relevant time period, than it also is insufficient to establish her impairments have had more than a *de minimis* impact on her ability to perform basic work activities. As such, no error occurred here.

II.     Utilization of a Medical Exprt

In early 2012, Laura Dalmer-White performed a neuropsychological evaluation, in which she commented that plaintiff "presents with a constellation of cognitive, mood and impulse issues that are compromising her capacity to manage her overall medical condition and to function adaptively in her current primary role as a stay-at-home mother."[29] Dr. Dalmer-White opined that plaintiff's assessment "is consistent with," and that it was "more likely" that, her "documented cognitive issues reflect residual deficits from the cerebrovascular accident" that occurred prior to her DLI.[30] The ALJ gave Dr. Dalmer-White's conclusions "little weight," because they demonstrated plaintiff's symptoms did not worsen until well after her DLI, and thus were "too remote" to reflect her functioning during the relevant time period.[31]

Plaintiff admits that what makes it so difficult to determine the level of impairment that

---

[28] AR 71, 77.

[29] AR 294.

[30] AR 295.

[31] AR 17.

ORDER - 5

existed prior to her DLI "is the lack of significant medical evidence of record between the end of 2004 and" Dr. Dalmer-White's evaluation report.[32] However, she criticizes the ALJ for taking "the easy way out" and "simply conclud[ing] that the absence of medical information means the absence of any sort of impact from [her] stroke," without first obtaining the services of a medical expert or ordering a consultative examination.[33] The duty to further develop the record, though, "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."[34] Neither situation is present here.

There appears to be some ambiguity or question as to the exact cause of the cognitive issues Dr. Dalmer-White found. Based on a neurological evaluation performed in early April 2008, James McDowell, M.D., found "no suggestion at all that [plaintiff's] memory problem is related to her cerebrovascular problem."[35] No medical source, however, including Dr. Dalmer-White, has opined that plaintiff suffered any cognitive problems during the period prior to or as of her DLI. Indeed, in early April 2005, Dr. McDowell reported that plaintiff had "done well" since her stroke, with "[n]o current cerebrovascular symptoms."[36] Nor is the record inadequate to allow for a proper evaluation of the evidence. While there may be a *lack* of evidence, this does not at all mean there is an *inadequate* basis upon which the ALJ could make her determination.

Last, plaintiff argues Social Security Ruling (SSR) 83-20 supports her argument for the need of a medical expert. SSR 83-20 sets forth the Commissioner's policy when establishing a claimant's onset date of disability.[37] However, that ruling comes into play only *after* a claimant

---

[32] Dkt. 15, p. 6.

[33] *Id.* at pp. 6-7.

[34] *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).

[35] AR 284.

[36] AR 281.

[37] 1983 WL 31249

ORDER - 6

has met the "ultimate burden" of proving disability prior to his or her DLI.[38] It is only when the claimant has established disability *and* the "record is ambiguous as to the onset date of disability," that SSR 83-20 requires the ALJ to "assist the claimant in creating a complete record" that "forms a basis for" establishing a disability onset date.[39] As plaintiff has not been found disabled, SSR 83-20 is inapplicable here, and plaintiff's reliance thereon is misplaced.

III.     The ALJ's Evaluation of the Lay Witness Evidence

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."[40] In rejecting lay testimony, the ALJ need not cite the specific record if "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision.[41] The ALJ also may "draw inferences logically flowing from the evidence."[42]

The record contains testimony and written statements from plaintiff's husband, mother-in-law, and friend, regarding what they observed of the symptoms and functional limitations she experienced shortly after her stroke in 2004.[43] The ALJ rejected plaintiff's husband's testimony for the following reasons:

> [T]he claimant's husband admitted that in 2004 he was not at home during the day. Rather he was working 70 miles from home at Microsoft. Thus, he would not have had first hand knowledge of the claimant's functioning during the

---

[38] *Armstrong v. Comm'r of the Social Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998).

[39] *Id.*

[40] *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

[41] *Id.* at 512.

[42] *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

[43] AR 43-61, 206-08, 212-14.

ORDER - 7

day. Despite this, when he was asked if she slept as much in 2004, he said it was worse. He said that the only thing the claimant could do was sleep and be roused enough to feed the baby. However, this claim is inconsistent with the medical evidence of file, which shows that the claimant reported in July 2004, that she "basically feels well" and that she was only a "bit more tired" than baseline. He maintained that [the claimant's] friend and her children lived with them and provided support by helping with the baby and keeping things going in the house. However, . . . this assertion is inconsistent with the testimony of [the claimant's] friend.[44]

With respect to plaintiff's friend the ALJ found:

[She] testified that she and her two children lived with the claimant for about 2 years starting in 2003. She testified that she worked full time during the time period she lived with the claimant. She testified that the claimant was a stay at home mom and took care of her 13 and 15 year old as well as the claimant's own children. She testified that her children would help out a bit with cooking, but that they weren't terribly helpful. She testified that her 13 year old would help with the younger ones especially with keeping the 4 year old out of trouble. She testified that the claimant had problems with focusing and remembering to do things. She testified that at about 4:30 in the afternoon the claimant would have problems with fatigue. She said she would get home from work at 5:30 and take over and let the claimant sit down. These activities demonstrate that the claimant's impairments did not cause more than minimal limitations on her ability to perform basic work activities. Not only did she spend the entire day caring for her own very young children but she also took care of [her friend's] two teenagers for part of the day while their mother was at work.[45]

Finally, in regard to plaintiff's mother-in-law's testimony the ALJ stated:

She describes a "down hill slide" in the claimant's functioning. However, [her] statements as to the claimant's functioning are inconsistent with the objective evidence during the relevant time period including the lack of reports of symptoms to providers, the observations of the claimant's providers, and the claimant's activities.[46]

Plaintiff argues that in rejecting her husband's testimony, the ALJ ignored that fact that while he may not have seen her during the work day, he still saw her on the weekends. This still

---

[44] AR 16-17.

[45] AR 17.

[46] *Id.* (internal citation omitted).

ORDER - 8

leaves the fact that as the ALJ noted, the medical evidence in the record from July 2004, showed essentially no complaints on plaintiff's part.[47] Such inconsistency with the medical evidence is a valid basis for discounting lay witness testimony.[48] For the same reason, the ALJ also did not err in rejecting plaintiff's mother-in-law's statement.

As for the lay witness evidence from plaintiff's friend, the Court agrees with plaintiff that the activity level reflected in her friend's testimony and written statement does not necessarily indicate plaintiff's impairments cause no more than minimal limitations in her ability to work.[49] Nevertheless, the Court finds any error the ALJ committed regarding the lay witness evidence from plaintiff's friend to be harmless,[50] given that the ALJ gave "well-supported reasons for rejecting [the] similar testimony" of plaintiff's husband and mother, as well as the testimony of plaintiff herself, which plaintiff has not challenged.[51]

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

DATED this 23rd day of May, 2016.

Karen L. Strombom
United States Magistrate Judge

---

[47] AR 231.

[48] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

[49] AR 56-60, 212-14.

[50] *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).

[51] *Molina v. Astrue*, 674 F.3d 1104, 1117, 1122 (9th Cir. 2012).

ORDER - 9